UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | X | |
| | X | |
| | X | |
| Against | X | Indictment No. CR 19-582 (DRH) |
| | X | |
| AVENTURA TECHNOLOGIES, INC., | X | |
| Defendant. | X | |
| | X | |

DEFENDANT'S MOTION FOR THE RELEASE OF SEIZED FUNDS
FOR THE PREPARATION OF A DEFENSE FOR DEFENDANT AND
CO-DEFENDANT CORPORATE EMPLOYEES

Samuel M. Braverman, Esq.
Fasulo Braverman & Di Maggio, LLP
Attorneys for Defendant Aventura Technologies, Inc.
225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
SBraverman@FBDMLaw.com

<u>Introduction</u>

Aventura Technologies, Inc. ("Aventura") moves this Court pursuant to the Fifth and Sixth Amendments to the United States Constitution for an order releasing funds seized by the Government so that (1) Aventura can defend itself in the instant prosecution, and (2) Aventura can contribute to the defense expenses of its co-defendant corporate employees. This Court has the authority to grant this motion to compel release of the funds to the defense for this purpose. *See generally Kaley v. United States*, 134 S.Ct. 1090, 1095, n.3 (2014) (noting that lower courts "have uniformly allowed the defendant to litigate . . . whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment," and that the Government "agreed that a defendant has a constitutional right to a hearing on that question"); *See also United States v. LaVilla*, 553 Fed. Appx. 45 (2d Cir. 2014) ("When an *ex parte* pretrial restraint is placed on a defendant's assets, thereby restricting his ability to retain counsel of choice, that defendant must be afforded 'an adversary, post-restraint, pretrial hearing as to probable cause that (a) the defendant committed the crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable.'" *LaVilla*, at 3, quoting *United States v. Monsanto*, 924 F.2d 1186, 1203, (2nd Cir.) (*en banc*), *cert denied*, 502 U.S. 943 (1991).

This motion is brought under two separate theories: Frist, the funds seized by the Government must be segregated by "tainted" and "untainted" sources, so that the "untainted" funds can be released to Aventura on due process grounds. *See Honeycutt v. United States*, 137 S Ct. 1626 (2017) and *Luis v. United States*, 136 S. Ct. 1083 (2016).

Second, fundamental fairness and the fundamental guarantees of the Sixth Amendment require the Government to allow a defendant to provide for his defense if he is able to do so, and to have the Government fund that defense if he is indigent. A corporate defendant is no different from an individual person, under the law and the rights afforded to a person in the Bill of Rights. (*See Citizens*

*United v. Federal Election Commission*, 558 U.S. 310 (2010)). To allow the Government to prevent

Aventura from spending its money on its defense is an impermissible interference with the right to

Counsel. As the Court held in *Luis* (in discussion of "untainted" third party assets):

> Third, as a practical matter, to accept the Government's position could well erode the right to counsel to a considerably greater extent than we have so far indicated. To permit the Government to freeze Luis' untainted assets would unleash a principle of constitutional law that would have no obvious stopping place. The statutory provision before us authorizing the present restraining order refers only to "banking law violation[s]" and "Federal health care offense[s]." 18 U. S. C. §1345(a)(2). But, in the Government's view, Congress could write more statutes authorizing pretrial restraints in cases involving other illegal behavior—after all, a broad range of such behavior can lead to postconviction forfeiture of untainted assets. See, *e.g.*, §1963(m) (providing for forfeiture of innocent, substitute assets for any violation of the Racketeer Influenced and Corrupt Organizations Act).

> Moreover, the financial consequences of a criminal conviction are steep. Even beyond the forfeiture itself, criminal fines can be high, and restitution orders expensive. See, *e.g.*, §1344 ($1 million fine for bank fraud); §3571 (mail and wire fraud fines of up to $250,000 for individuals and $500,000 for organizations); *United States* v. *Gushlak*, 728 F. 3d 184, 187, 203 (CA2 2013) ($17.5 million restitution award against an individual defendant in a fraud-on-the-market case); *FTC* v. *Trudeau*, 662 F. 3d 947, 949 (CA7 2011) ($37.6 million remedial sanction for fraud). How are defendants whose innocent assets are frozen in cases like these supposed to pay for a lawyer—particularly if they lack "tainted assets" because they are innocent, a class of defendants whom the right to counsel certainly seeks to protect? See *Powell*, 287 U. S., at 69; Amar, 84 Geo. L. J., at 643 ("[T]he Sixth Amendment is generally designed to elicit truth and protect innocence").

> These defendants, rendered indigent, would fall back upon publicly paid counsel, including overworked and underpaid public defenders. As the Department of Justice explains, only 27 percent of county-based public defender offices have sufficient attorneys to meet nationally recommended caseload standards. Dept. of Justice, Bureau of Justice Statistics, D. Farole & L. Langton, Census of Public Defender Offices, 2007: County-based and Local Public Defender Offices, 2007, p. 10 (Sept. 2010). And as one *amicus* points out, "[m]any federal public defender organizations and lawyers appointed under the Criminal Justice Act serve numerous clients and have only limited resources." Brief for New York Council of Defense Lawyers 11. The upshot is a substantial risk that accepting the Government's views would—by increasing the government-paid-defender workload—render less effective the basic right the Sixth Amendment seeks to protect.

> We add that the constitutional line we have drawn should prove workable. That line distinguishes between a criminal defendant's (1) tainted funds and (2) innocent funds needed to pay for counsel. We concede, as Justice Kennedy points out, *post*, at 12–13,

that money is fungible; and sometimes it will be difficult to say whether a particular bank account contains tainted or untainted funds. But the law has tracing rules that help courts implement the kind of distinction we require in this case. With the help of those rules, the victim of a robbery, for example, will likely obtain the car that the robber used stolen money to buy. See, *e.g.*, 1 G. Palmer, Law of Restitution §2.14, p. 175 (1978) ("tracing" permits a claim against "an asset which is traceable to or the product of" tainted funds); 4 A. Scott, Law of Trusts §518, pp. 3309–3314 (1956) (describing the tracing rules governing commingled accounts). And those rules will likely also prevent Luis from benefiting from many of the money transfers and purchases Justice Kennedy describes. See *post*, at 12–13.

*Luis*, at 26-28.

## LOCAL RULE CERTIFICATION

Undersigned counsel has conferred with the Government and the Government will not agree to the release of any seized funds.

## ARGUMENT

I.      *Factual and Procedural Background*.

On November 7, 2019, a criminal complaint issued charging Aventura with conspiring to commit wire fraud. The complaint charges a conspiracy over a 14-year period of 2006-2019. Concurrent with the issuance of the criminal complaint, the Government executed a series of seizure warrants for numerous bank accounts, including numerous accounts owned or controlled by Defendant Aventura. These are all the funds possessed by Aventura and were necessary for the conducting of corporate business, payroll, and payment of taxes. Further, upon information and belief, persons or companies who owed money to Aventura were told by the Government and/or its agents to withhold payment on said accounts, or to stop or cancel checks already sent to Aventura.[1] Undersigned counsel was told directly by counsel for an Aventura customer that his client was told by the Government and/or its agents words to the effect of "there was no reason to pay Aventura

---

[1]  I have spoken with the Government and have been assured by the AUSA's handling this matter that no attorney in their office, nor any agent to their knowledge, has advised a corporate client of Aventura to withhold payment of invoices.

because they are a criminal enterprise." All this seizure, interference with commerce and contract, and defunding of Aventura happened before Aventura has been convicted of any offense. Nothing in the seizure warrants authorizes the Government to prevent Aventura's customers from paying their lawful debts to Aventura.

This is an extensive prosecution, spanning more than three years of investigation, alleging more than 10 years of criminal conduct, consisting of millions of documents in discovery, charging a half dozen corporate employees in addition to the corporate defendant, and already lasting more than 18 months since arrest (with F.R.Cr.P. 16 discovery production perhaps only halfway completed, and discovery review by defendants at a standstill). The Government estimates it has seized multiple *terabytes* of potentially relevant electronic materials, the geographic scope of the instant prosecution spans the globe, and the allegations include that the individual defendants are responsible for the criminal allegations of each other and the corporation (even if they themselves did not do a particular criminal act), therefore requiring each defendant (including the corporate defendant Aventura) to review all the discovery.

This Court has designated this matter a "complex case" for purposes of the Speedy Trial Act and case management due to the exceptionally complex nature of the discovery, the broad nature of the allegations, and the burden on the Government for production of discovery and the defendants in reviewing that discovery.

Defenses of cases of this nature are prohibitively and ruinously expensive. Regardless of outcome, the mounting of any defense requires *at a minimum* the review of the evidence purported to be incriminating, before an attorney can counsel his client on an appropriate course of action (be it trial, plea, or cooperation.) With no end in sight on the discovery front in this case, Aventura and its co-defendant corporate employees do not have the resources to make such an inquiry. (*See, generally,* Sarah Ribstein, *A Question of Costs: Considering Pressure on White-Collar Criminal*

*Defendants*, Duke Law Journal, Vol. 58, 857 (2009) (discussing significant costs associated with defending white-collar prosecutions); *See, e.g.,* Peter Lattman, *Convicted Fund Manager Ordered To Pay Morgan Stanley $10.2 Million*, New York Times, 03/21/2012 http://dealbook.nytimes.com/2012/03/21/convicted-frontpoint-manager-to-pay-10-2- million-to-morgan-stanley/ (noting defendant owed the bank $3.8 million in advanced legal fees); Peter Lattman, *Goldman Stuck With A Defense Tab, And Awaiting a Payback*, New York Times, June 18, 2012, available at http://dealbook.nytimes.com/2012/06/18/gupta-legal-bills/?_php=true&_type=blogs&_r=0 (noting that Gupta's defense cost nearly $30 million).

Undersigned counsel has investigated the costs of outsourcing the digital hosting of the discovery documents (which is necessary for organized search and review of the millions of pages of documents) and I have received estimates exceeding $200,000.

However, there are funds available to pay for this defense and associated costs. The funds seized by the Government are the funds of Aventura, earned by it as it conducted business with numerous clients worldwide, including the United States government. These funds would significantly cover the majority of the expenses of the defense, and no different from other corporate defendants, are the appropriate use of corporate funds in a corporate criminal trial.

In *United States v. Monsanto*, 491 U. S. 600, 615 (1989), the Court held "a pre-trial asset restraint constitutionally permissible whenever there is probable cause to believe that the property is forfeitable." *Kaley v. United States*, 134 S. Ct. 1090, 1095 (2014), *citing Monsanto*, 491 U.S. at 615. "That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 134 S.Ct. at1095, *citing* 18 U.S.C. §853(a). As the Court noted in *Kaley*, the *Monsanto* Court "declined to consider 'whether the Due Process Clause requires a hearing' to establish either or both of those

aspects of forfeitability." *Kaley*, 134 S.Ct. at 1095, *citing Monsanto*, 491 U.S. at 615, n. 10.

In *Kaley*, the Court resolved the first issue, holding that a defendant seeking access to restrained funds is not constitutionally entitled to a post-indictment, pretrial hearing to challenge a grand jury's determination of probable cause that they committed the crimes charged. *Kaley*, 134 S.Ct. 1090. In so ruling, however, the Court was careful to note that since *Monsanto*, the lower courts "have uniformly allowed the defendant to litigate the second issue stated above: whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in theindictment." *Kaley*, 134 S.Ct. at 1095.[2] The Court then immediately noted, in a footnote, that "[a]t oral argument, the Government agreed that a defendant has a constitutional right to a hearing on that question," and the Court would not therefore opine on the issue. *Kaley*, 134 S.Ct. at 1095, n.3. Here, Aventura seeks an evidentiary hearing on the second point: to determine whether the government can sustain its burden of demonstrating that "probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently

---

[2] *See, e.g.*, *United States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir.1991) ("the Fifth and Sixth amendments, considered in combination, require an adversary, post-restraint pretrial hearing as to probable cause that (a) the defendant committed the crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets (i) needed to retain counsel of choice and (ii) ordered *ex parte* pursuant to 21 U.S.C. §853(e)(1)(A)); *U.S. v. All Funds on Deposit in Account Nos. 94660869, 9948199297, 80007487*, 2012 WL 2900487, *1 (S.D.N.Y.2012) (internal citations omitted); *United States v. Moya-Gomez*, 860 F.2d 706, 731 (7th Cir.1988), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Harvey*, 814 F.2d 905, 928 (4th Cir.1987), *superceded as to other issues*; *In re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637 (4th Cir.1988) (en banc), aff'd, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); *United States v. Their*, 801 F.2d 1463, 1466-70 (5th Cir.1986) (hearing required as a matter of statutory interpretation), *modified*, 809 F.2d 249 (5th Cir.1987); *United States v. Crozier*,777 F.2d 1376, 1383-84 (9th Cir.1985); *United States v. Lewis*, 759 F.2d 1316, 1324-25 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985); *United States v. Spilotro*, 680 F.2d 612, 616-19 (9th Cir.1982); *United States v. Long*, 654 F.2d 911, 915-16 (3d Cir.1981); *United States v. E-Gold, LTD, et al.*, 521 F.3d 411, 419 (D.C.C.A.2008) ("holding that defendants have a right to an adversary post-restraint, pretrial hearing for the purpose of establishing whether there was probable cause 'as tothe defendant[s'] guilt and the forfeitability of the specified assets' needed for a meaningful exercise of their rights to counsel").

related tothe crime charged in the [complaint]." *Kaley*, 134 S.Ct. at 1095.

In *Luis v. United States*, 136 S. Ct. 1083 (2016), the Supreme Court noted that the Government does not have a sufficient interest in untainted property to dictate how it should be used before trial. See *Luis*, 136 S. Ct. at 1092 ("if this were a bankruptcy case, the Government would be at most an unsecured creditor" with respect to the defendant's untainted property. "At least regarding her untainted assets, Luis can at this point reasonably claim that the property is still 'mine,' free and clear"). Only if the property is shown to be tainted does the government have a sufficiently "'substantial' interest . . . to justify the property's pretrial restraint." Id. (citations omitted).

The Government cannot argue that *Monsanto* bars a hearing on whether assets restrained by *ex parte* order are tainted unless the funds are needed to pay criminal defense counsel. *Kaley*, seen through the lens of *Honeycutt v. United States*, 137 S Ct. 1626 (2017), made it clear that the owner of property sought to be released is always entitled to a hearing to test the Government's evidence on forfeitability: § 853(e)(1) authorizes pretrial freezes 'to preserve the availability of property described in subsection (a) . . . for forfeiture.' Pretrial restraints on forfeitable property are permitted *only* when the Government proves, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) 'the property at issue has the requisite connection to the crime.' *Honeycutt*, 137 S. Ct. at 1633 (quoting *Kaley*, 134 S. Ct. at 1095) (emphasis added); see also *Honeycutt*, 137 S. Ct. at 1633 ("forfeiture applies only to specific assets") (quoting *Kaley*, 134 S.Ct. at 1102 n.11). *See also United States v. Cosme*, 796 F.3d 226 (2nd Cir. 2015).

Aventura has the right to a hearing on the pretrial restraint of untainted funds needed to pay counsel upon making the appropriate showing. *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993) (a corporation has a Sixth Amendment right to be represented by counsel); *Monsanto*, *supra*. While the parties may disagree about what the legally required showing is, there

is no question that the law provides an appropriate avenue to address Aventura's problem without seeking a lengthy delay to its criminal trial.

II.      *Conclusion*.

Wherefore, Aventura requests an evidentiary hearing pursuant to *Kaley* and *Cosme*, and then for an order returning the identified funds to Aventura, such that it can secure the rights and privileges afforded it by the Fifth and Sixth Amendments.

Respectfully submitted,

*Sam Braverman*
Samuel M. Braverman, Esq.
Fasulo Braverman & Di Maggio, LLP
Attorneys for Defendant Aventura Technologies, Inc.
225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
SBraverman@FBDMLaw.com