FILED
CLERK

9:47 am, Sep 02, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA    *    Case No. 19-CR-00582(DRH)
     *
     *    Long Island Federal
     *     Courthouse
     *    814 Federal Plaza
    v.      *    Central Islip, NY  11222
     *
CHRISTINE LAVONNE LAZARUS,    *    July 29, 2021
     *
     Defendant.    *
     *

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          ALEXANDER MINDLIN, ESQ.
                       IAN C. RICHARDSON, ESQ.
                       KAYLA C. BENSING, ESQ.
                       U.S. Attorney's Office
                       Eastern District of NY
                       271 Cadman Plaza East
                       Brooklyn, NY   11201

For the Defendant:          JOEL MARK STEIN, ESQ.
                       Law Offices of Joel M. Stein
                       30 Wall Street, 8th Floor
                       New York, NY 10005

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced)

2                  THE COURT:  Good morning, it's Judge Lindsay.

3                  THE DEFENDANT:  Good morning.

4                  MR. STEIN:  Good morning, Your Honor.

5                  MR. MINDLIN:  Good morning, Judge.

6                  THE COURT:  All right.  Can we have appearances,

7      please, for the record?

8                  MR. MINDLIN:  Judge, for the government, Assistant

9      U.S. Attorney Alex Mindlin.

10                 MR. STEIN:  Good morning, Your Honor.  For Ms.

11     Lazarus, Joel Stein.

12                 THE COURT:  And now can we have the defendant sworn

13     in?

14                 THE CLERK:  Yes.

15          (The defendant is sworn.)

16                 THE CLERK:  Yes.  Could you please state your name

17     for our record?

18                 THE DEFENDANT:  Yes.  It's Christine Lavonne

19     Lazarus.

20                 THE CLERK:  Thank you.

21                 THE DEFENDANT:  You're welcome.

22                 THE COURT:  All right.  So I'm given to understand,

23     Mr. Stein, that your client wishes to change her plea from

24     not guilty to guilty on Counts 1 and 2 of the indictment?

25                 MR. STEIN:  Correct.

3

1          THE COURT:  Okay.  Let me just first review the

2     administrative order that was just extended by our chief

3     judge with respect to proceedings, the findings of -- after

4     consultation with our epidemiologist who has been retained by

5     the court to guide us through the COVID situation, the

6     guidance has been to continue to avoid in-person proceedings

7     at least for another month to the end of August.

8          And the concern arises in part now from the Delta

9     variant, and several other variants that have been detected.

10    So out of concern for everybody's well being, we're in charge

11    to do these proceedings by video and/or phone.

12         So have you reviewed that with your client and does

13    she consent to proceeding by video?

14         MR. STEIN:  Yes and yes.

15         THE COURT:  Okay.  All right.  So let's go forward

16    with the pleas.  Ms. Lazarus, you've been sworn in.

17         THE DEFENDANT:  Yes.

18         THE COURT:  I want to go over -- when you -- before

19    you showed up here today, you went over a what we call an

20    allocution form, which really is a series of questions.  Had

21    your --

22         THE DEFENDANT:  Yes.

23         THE COURT:  -- attorney probably went over with

24    you.  Do you remember that?

25         THE DEFENDANT:  Yes, I do.

4

1          THE COURT:  I'm going to ask you those same

2     questions, but now you're going to be answering them under

3     oath, so the answers you give are subject to the penalties of

4     perjury if you misrepresent yourself.  Okay.  So let's go

5     through them.

6          THE DEFENDANT:  (Indiscernible.)

7          THE COURT:  All right.  So can you tell me how old

8     you are?  No lying.

9          THE DEFENDANT:  I'm 47.

10          THE COURT:  Okay.  I'm just teasing.  Sorry.

11          THE DEFENDANT:  I'm 47.  27 is the new 47.

12          THE COURT:  Okay.  I'll take that.  Are you a

13     citizen of the United States?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  All right.  And you've talked to Mr.

16     Stein about your going forward with this plea, and you

17     understand what we're doing, correct?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Now, how far did you get in school?

20          THE DEFENDANT:  I have a bachelor's of science

21     degree.

22          THE COURT:  Okay.  Would you actually -- so you did

23     get your diploma.  All right.

24          THE DEFENDANT:  Yes.

25          THE COURT:  Did you go --

5

1          THE DEFENDANT:  Four years.

2          THE COURT:  -- beyond that?

3          THE DEFENDANT:  No, I didn't.  I've taken on and

4     off just, you know, continued learning classes on and off,

5     just, you know, something here and there.

6          THE COURT:  Okay.

7          THE DEFENDANT:  (Indiscernible) class, but yes.

8          THE COURT:  All right.  So have you recently been

9     under the care of physician or psychiatrist?

10         THE DEFENDANT:  No, I have not.

11         THE COURT:  In the last 24 hours, have you taken

12    any narcotic drugs, medicine or pills, or drunk any alcohol?

13         THE DEFENDANT:  No, I have not.

14         THE COURT:  Have you ever been hospitalized for a

15    narcotic --

16         MR. STEIN:  Excuse me.

17         THE COURT:  Yes.

18         MR. STEIN:  Excuse me.  Lavonne, just you may want

19    to mention what you told me you had taken this morning.

20         THE DEFENDANT:  Oh, I didn't take it.  I was going

21    to take some (indiscernible), but I didn't take any.

22         MR. STEIN:  Okay.

23         THE COURT:  Oh, okay.  So you took nothing.  Okay.

24         THE DEFENDANT:  Yes.

25         THE COURT:  All right.  So --

6

1          THE DEFENDANT:  I was going to, but I didn't.  I
2     didn't take it.
3          THE COURT:  All right.  Have you been hospitalized
4     for a narcotics addiction?
5          THE DEFENDANT:  I have a long time ago.  Yes.
6          THE COURT:  All right.  Just approximately how long
7     ago?
8          THE DEFENDANT:  Oh, I'd say give or take like 20
9     years.  It's been a long time.
10          THE COURT:  And really the questions are really
11     designed to make sure that your mind is clear today.  Is your
12     mind clear?
13          THE DEFENDANT:  Yes, it is, ma'am.  It is.
14          THE COURT:  All right.  And you understand what's
15     going on, right?
16          THE DEFENDANT:  I do.
17          THE COURT:  Mr. Stein, have you discussed this
18     matter with your client?
19          MR. STEIN:  Yes.
20          THE COURT:  And are you satisfied she understands
21     the rights she'd be giving up by answering the plea of
22     guilty?
23          MR. STEIN:  Yes.
24          THE COURT:  Do you have any doubts as to her
25     competency to plead at this time?

7

1              MR. STEIN:  No.

2              THE COURT:  Now, Ms. Lazarus, I'm going to review

3      with you what would happen if you persisted in your plea of

4      not guilty.  Because if you -- because you have a right to

5      continue your plea of not guilty.

6              Do you understand that?

7              THE DEFENDANT:  I do, yes.

8              THE COURT:  If you were to continue your plea of

9      not guilty, under the Constitution and laws of the United

10     States, you would be entitled to a speedy and public trial

11     with the assistance of your attorney to help you with every

12     stage of the proceeding and to prepare your defense.

13             Do you understand that part?

14             THE DEFENDANT:  I do.

15             THE COURT:  Do you also understand that if you got

16     to the point where you couldn't afford a lawyer, the Court

17     would appoint an attorney for you, and that person would be

18     there to defend you until your case was fully completed?

19             THE DEFENDANT:  Yes, I do.

20             THE COURT:  At a trial, you'd be presumed to be

21     innocent and the government would have to overcome that

22     presumption by proving your guilt by introducing competence

23     evidence and establishing your guilt beyond a reasonable

24     doubt.  And if they failed to do that, the jury would have a

25     duty to find you not guilty.

8

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  And the points I'm trying to make is

4    you have no burden -- you're presumed to be innocent, so you

5    have no burden to prove anything at a trial.  You could if

6    you wanted to, but you have no burden to do that under

7    (indiscernible).

8          THE DEFENDANT:  I understand.

9          THE COURT:  And in a trial, the witnesses that the

10   government has would come to court and would testify in your

11   presence.  Your attorney would have the right to cross-

12   examine those witnesses.  He could call witnesses on your

13   behalf if you wanted to.  That you could compel witnesses to

14   appear by subpoena.  We could object to evidence that the

15   government offers against you and he could offer evidence on

16   your behalf if you wanted to do that as well.  That's how a

17   trial works proceeds.

18          Do you understand that?

19          THE DEFENDANT:  I do.

20          THE COURT:  And if there were a trial, you'd have

21   the right to testify if you wanted to, but you couldn't be

22   forced to testify, because you have the right not to

23   incriminate yourself, and the judge -- the trial judge would

24   tell the jury that if you decided not to testify, they

25   couldn't hold that against you in making their decision.

9

1          Do you understand?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  But if you go forward with your plea of

4     guilty and the Court accepts your plea of guilt, you'll be

5     giving up your constitutional rights to trial and these other

6     rights I've talked to you about.

7          There would be no further trial of any kind.  No

8     right to attack the question of whether or not you're guilty,

9     because the judgment of guilt would be entered by the Court

10    and you can't walk back from that, and going back after that

11    plea is entered.

12         Do you understand?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  You could, however, appeal -- now, you

15    can't appeal the question of whether or not you're guilty if

16    you decide to go forward with your plea of guilty.

17         You could, however, appeal the sentence of the

18    Court and it's my understanding, placed on your agreement

19    with the government, that you have a limited right to appeal

20    the sentence to the Court and that would be limited to a term

21    of imprisonment of 210 months or less.

22         So just to be clear, if the Court sentences you to

23    210 months or less, you wouldn't even have the right to

24    appeal the sentence of the Court.

25         Do you understand that?

1          THE DEFENDANT:  I understand.

2          THE COURT:  Now, if you plead guilty, I'm going to

3    ask you questions about what you did in order to satisfy

4    myself that you are, in fact, pleading guilty to a crime, and

5    one which you committed, so in answering those questions,

6    you'd be giving up your right not to incriminate yourself.

7          Do you understand that part as well?

8          THE DEFENDANT:  I do.  I understand.

9          THE COURT:  Okay.  So you're willing to give up all

10   the rights to the trial and the other rights I've just

11   described to you and go forward with your plea of guilty?

12         THE DEFENDANT:  Yes.  Correct.

13         THE COURT:  All right.  Mr. Mindlin, I -- just to

14   summarize what the waiver on the sentence is, could you just

15   summarize what your plea agreement is with the -- with

16   defendant?

17         MR. MINDLIN:  Yes, Judge.  And if I -- if I may

18   briefly before we go on to that part of the proceeding.  I

19   may have missed it, but if we could just confirm with the

20   defendant that she consents to the referral to Your Honor for

21   the plea, and also that she -- I just would like her to be

22   made aware that she could be prosecuted for perjury today or

23   false statements as a result of her oath and -- and she also

24   will need to confirm the nature of the charges in question,

25   but perhaps Your Honor can do that later.  The two things

1        that I wanted to just --

2                    THE COURT:  (Indiscernible.)

3                    MR. MINDLIN:  -- discuss were the referral --

4        sorry.

5                    THE COURT:  I covered the perjury.  I didn't cover

6        your referral, so thank you for that reminder.

7                    MR. MINDLIN:  Of course.

8                    THE COURT:  With respect to the referral, Ms.

9        Lazarus, what the prosecutor is pointing out is that I'm not

10       the judge who is going to sentence you and this is the judge

11       who -- and who has been assigned district judge?  Hurley?

12                   MR. STEIN:  Judge Hurley.

13                   THE COURT:  So Judge Hurley is the assigned

14       district judge who will decide to what, if any, punishment is

15       appropriate.  So you have an absolute right to have Judge

16       Hurley take this plea.  In other words, to go through these

17       questions with you.

18                   But your attorney indicated that you would consent

19       to my asking you these questions, you do this on behalf of

20       Judge Hurley; is that right?

21                   THE DEFENDANT:  Yes.  That's correct.

22                   THE COURT:  Okay.  But I -- it's important that

23       you, now, you could have asked for him and insisted that he

24       do it.

25                   Do you understand?

12

1      THE DEFENDANT:  Yeah.  Oh, yeah, I understand.  No

2  problem.

3      THE COURT:  Okay.  All right.  And with respect to

4  the perjury, I think I told you at the outset that the --

5  having been sworn in that you -- your answers if not truthful

6  would be subject to prosecution of perjury?

7      THE DEFENDANT:  Understand.

8      THE COURT:  Do you understand?  Yes.

9      THE DEFENDANT:  Yes, I do.

10      THE COURT:  All right.  So, Mr. Mindlin, do you

11  want to summarize the agreement?

12      MR. MINDLIN:  Yes, Judge.  Briefly on the -- to

13  proceed to the plea agreement, the defendant would plead to

14  Counts 1 and 2 of the indictment in this case, both of which

15  charge conspiracy to commit wire -- wire mail fraud in

16  violation of 18 United States Code, Section 1349.  As Your

17  Honor pointed out, the plea agreement contains an appellate

18  waiver with respect to any sentence at or below 210 months.

19      THE COURT:  All right.  So with respect to the two

20  counts you've agreed to plead guilty to, Count 1, which is a

21  conspiracy to commit mail and wire fraud, and Count 2, a

22  conspiracy to commit mail and wire fraud, I just want to make

23  sure that you understand, Ms. Lazarus, what the government --

24  I told you the government would have to prove their case

25  against you beyond a reasonable doubt.  So as to each of

13

1      those counts, the elements are really the same.  That is, the

2      State would have to prove the (indiscernible).

3              They would have to prove that you engaged in

4      (indiscernible) or artificially defraud or to exchange money,

5      you and others, by the way.  It's not -- that's the

6      conspiracy count, is you together with others.

7              The dates in that scheme to defraud or obtain money

8      under properties of materially false and fraudulent pretenses

9      or representations as alleged in the indictment.  And that

10     you knowingly and willfully participated in that scheme to

11     artificially defraud, with knowledge of its fraudulent nature

12     on the specific intent to defraud.

13             And that in executing the scheme, you used or

14     caused  the use of -- you or -- and/or others with your

15     knowledge used the Internet and used the Interstate or

16     international wires, including the post office at times

17     (indiscernible) to implement the scheme and used it in

18     furtherance to defraud -- the conspiracy to defraud.  Do you

19     understand those are the elements the government would have

20     to show beyond a reasonable doubt?

21             THE DEFENDANT:  I understand.

22             THE COURT:  Now, so have you discussed Counts 1 and

23     2 with your attorney, the counts that you want to plead

24     guilty to?

25             THE DEFENDANT:  Yes, I have.

14

1          THE COURT:  And do you understand those charges,

2    correct?

3          THE DEFENDANT:  I do.

4          THE COURT:  I want to talk to you about what the

5    penalties are for Counts 1 and 2.  They're laid out in your

6    agreement with the government.

7          Count 1, which is the conspiracy to commit wire

8    fraud, carries with it a maximum term of imprisonment of 20

9    years and a minimum term of zero -- of imprisonment is zero.

10   And a maximum supervised release term of three years, which

11   would follow any term of imprisonment.

12         With respect to a fine, is to be the greater of

13   $250,000 or twice the gross gain or twice the gross loss.

14   There is restitution, which is mandatory (indiscernible) and

15   would be determined by Judge Hurley at a later time.  There

16   is a mandatory $100 special assessment and then there is a

17   criminal forfeiture provisions, which have been set forth and

18   discussed in your plea agreement with the government.

19         THE DEFENDANT:  All right.

20         THE COURT:  With respect to Count 2, it is

21   essentially the same level of punishment.  Maximum of

22   imprisonment is 20.  The minimum is zero.  The maximum

23   supervised release is three years to follow any term of

24   imprisonment.  The fine is the same, meaning not that -- when

25   I say the same, each count will be viewed separately by the

1    Court and evaluated as to how it's -- how the sentence will

2    occur.

3           The judge has a lot of discretion in terms of how

4    to impose sentence.  How there are sentencing guidelines that

5    will guide the Court in terms of what it considers an

6    (indiscernible) and appropriate punishment in your case.  But

7    notwithstanding the guidelines, Judge Hurley could say, I'm

8    going to follow them, or if he feels that there are

9    aggravating circumstances here, he can go over the guidelines

10   or he could go under the guidelines if he finds some reason

11   to do that.  Do you understand that?

12          THE DEFENDANT:  I do.  I understand.

13          THE COURT:  All right.  So let me just finish with

14   Count 2.  The maximum fine is the greater of $250,000 or

15   twice the gross gain or loss, and restitution in this count

16   as well mandatory and the full amount of each victim's

17   losses, which is to be determined by the Court.  That applies

18   to Count 1 as well.

19          There's a mandatory $100 special assessment and

20   there's also the criminal forfeiture, which is, I pointed

21   out, was discussed in the plea agreement in pages 16 -- or

22   paragraph 16 and 15 of your agreement with the government.

23          So you're familiar with these penalties --

24   potential penalties?

25          Do you understand?

1           THE DEFENDANT:  Yes, I am.  Yes.

2           THE COURT:  Thank you.  All right.  So I talked to

3    you about the sentencing guidelines.  So have you discussed

4    those guidelines with your attorney and you've kind of have

5    at least a minimal understanding, basic understanding of what

6    they are?

7           THE DEFENDANT:  Yes, I -- yes, I do.

8           THE COURT:  Okay.  So, I mean, I -- they are --

9    they are kind of comprehensive as they (indiscernible)

10   provided to the Court, and will review the guidelines and

11   evaluates everything about you, your history, your -- the

12   nature of the crimes, all of that, and what any criminal

13   history you may have as he will assess what is an appropriate

14   sentence in your case.

15           And some of the factors he's going to take into

16   account beyond the guidelines are listed in Title 18, United

17   States Code 3553, subsection (a).  And what -- I'm going to

18   read those to you.  I'm sure your lawyer read this to you,

19   but I have to do it myself.

20           The Court will impose a sentence sufficient, but

21   not greater than necessary to reflect the seriousness of the

22   offense, to promote respect for the law, to provide just

23   punishment for the offense, to afford deterrence as to other

24   criminal conduct, to protect the public from further crimes

25   by you, to provide you with educational or vocational

1   training, medial care, or other correctional treatment in the

2   most effective manner.  And then, of course, the Court would

3   also consider your cooperation if the government ever wishes

4   to notify (indiscernible).

5           So has your attorney gone over all of these factors

6   with you?

7           THE DEFENDANT:  Yes, he has.

8           THE COURT:  Okay.  So bottom line, do you realize

9   if the sentence turns out to be more severe than you

10  expected, you will be bound by your guilty plea and you

11  cannot appeal?

12          THE DEFENDANT:  I understand.  Yes, I do.

13          THE COURT:  And, now, we've talked a lot, I did

14  most of the talking, but do you have any questions about any

15  (indiscernible)?

16          THE DEFENDANT:  No.  Not at this time.

17          THE COURT:  So are you ready to go forward with

18  your changing of your plea to a guilty plea?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Mr. Stein, do you know of any legal

21  reason why the defendant should not be permitted to do that?

22          MR. STEIN:  No.

23          THE COURT:  Ms. Lazarus, are you satisfied with

24  your lawyer to this point?

25          THE DEFENDANT:  Yes.

18

1            THE COURT:  Do you think he's doing a good job for

2    you?

3            THE DEFENDANT:  Yes.

4            THE COURT:  All right.  So with respect to Count 1

5    and Count 2 of the indictment, I'm going to just tell you --

6    make sure you (indiscernible) in mind before I ask you how

7    you plea.

8            With respect to Count 1, which charges a conspiracy

9    to commit mail and wire fraud, also called a country of

10   origin scheme, did you -- on or -- with respect to that

11   count, which charges that on or about between August 1st,

12   2006 and November 7th, 2019, those being approximate dates,

13   within the Eastern District of New York, did you, together

14   with others, knowingly and intentionally conspire to devise a

15   scheme and artifice to defraud, one or more persons,

16   including U.S. government agencies, contractors, and private-

17   sector customers, in order to obtain money and property from

18   them by means of materially false and fraudulent pretenses,

19   representations and promises, by falsely stating that

20   merchandise was made in the United States and falsely stating

21   merchandise was made by Aventura Technologies, and for the

22   purpose of executing the scheme, merchandise was placed in a

23   post office and authorized depository of mail and wire fraud,

24   or wire services used to transmit communications in

25   furtherance of this scheme to commit fraud.

1                With respect to Count 1, how do you plead to that

2       count, which charges you what I've described?

3                THE DEFENDANT:  Guilty.

4                THE COURT:  Moving on to Count 2, which charges --

5       by the way is called the conspiracy to commit mail and wire

6       fraud with respect to a woman-owned small business claim.

7       The charges that in or about and between August 1st, 2006 and

8       November 7th, 2019, those being approximate dates, you, with

9       others, within the Eastern District of New York and

10      elsewhere, knowingly and intentionally conspired to devise a

11      scheme to defraud one or more persons, including U.S.

12      government agencies, and to obtain money and property from

13      them by means of false or fraudulent -- materially false or

14      fraudulent pretenses or representations, namely that these

15      false representations that Aventura Technologies, a woman-

16      owned business, and for the purposes of executing such scheme

17      and artifice, matters, materials were placed in the post

18      office to be delivered by the U.S. Postal Service, and

19      private commercial carriers were also used, and there were

20      shipments of merchandise and transmission of wire

21      communications in furtherance of the scheme to defraud, and

22      in further -- which -- to which country of origin, which --

23      which occurred in the country of origin, on their product and

24      which (indiscernible) alleged woman-owned small business

25      scheme. All of those misstatements were made in furtherance

1      of that scheme to defraud the government and other entities.

2              Do you understand that count?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  And with respect to that count, how do

5      you plead?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  Now, are you entering this plea of

8      guilty voluntarily and of your own freewill?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Has anyone threatened you or forced you

11     in any way to plead guilty?

12             THE DEFENDANT:  No.

13             THE COURT:  Other than the agreement of the

14     government, which we've discussed on the record, has anyone

15     else made any promises to you that would have caused you to

16     plead guilty?

17             THE DEFENDANT:  No.

18             THE COURT:  Has anyone promised you anything with

19     respect to how -- what your sentence will be?

20             THE DEFENDANT:  No.

21             THE COURT:  So can you tell me in your own words,

22     and you can start with Count 1 or Count 2, however you want

23     to proceed, but I need you to tell me in your own words what

24     it is you did.

25             THE DEFENDANT:  Okay.  In response to question 51

1   and Counts 1 and 2, I, Lavonne Lazarus, with much regret,

2   committed fraud by soliciting business as a director of

3   business development, Aventura Technologies.  This includes

4   developing business and submitting contracts on the company's

5   behalf stating that Aventura was a woman-owned small business

6   and that the products were made in the US, which I knew to be

7   false.

8           With knowledge of Aventura's fraudulent conduct, I

9   promoted Aventura's Technologies under the direction and

10  guidance of Jack Cabasso, not always through the federal

11  government, but through many other businesses globally, which

12  was wrong, and I'm very sorry.

13          THE COURT:  Did you use the mail and, you know,

14  telephone and wire communications, Internet, email and the

15  likes?

16          THE DEFENDANT:  I did, yes.

17          THE COURT:  And with respect to where this

18  happened, where was this?  Where were you located?

19          THE DEFENDANT:  The company was -- had moved a few

20  times, but the corporate headquarters at the very end was in

21  Commack, but their base -- but we also had company phones,

22  so, I mean, we -- whenever you traveled, it's pretty much

23  wherever globally were -- you were.  We corresponded with

24  clients.

25          THE COURT:  So some, if not much of this conduct,

1    occurred in Suffolk County?

2              THE DEFENDANT:  I would say yes.  Yes.  At the

3    headquarters, yes.

4              THE COURT:  Okay.  I think that's sufficient.  Mr.

5    Mindlin, do you want to add anything to that?

6              MR. MINDLIN:  No, Your Honor.  That's sufficient

7    from the government's point of view.

8              THE COURT:  All right.  So why don't you, Mr.

9    Mindlin, outline the government's proof here.  How were you

10   going to prove the case here?

11             MR. MINDLIN:  Yes, Your Honor.  If the government

12   were to put to its burden at trial, the government would

13   introduce emails, bid communications with the government,

14   shipping records of products imported by Aventura, the

15   results of covert interceptions of these products, and

16   notably recorded telephone conversations between this

17   defendant and undercover government agents in which she

18   represented, with knowing falsity that those products had

19   been made in the United States, learned that they were made

20   in China, and as well as other conversations, including chats

21   between this said defendant and others at Aventura's offices

22   similarly acknowledging her knowledge that those products

23   were (indiscernible) American made.

24             That's what some of the evidence the government

25   would introduce at trial.

23

1     THE COURT:  Okay.  All right.  Then, based on the

2  information that has been given to me, I find that the

3  defendant is acting voluntarily.  I find that you fully

4  understand the (indiscernible) as well as the consequences of

5  your plea of guilty, and I certainly find there is factual

6  basis for this case.

7     And, therefore, accept your plea of guilty of

8  Counts 1 and 2 of the indictment and I will recommend that

9  Judge Hurley do the same.

10     I think that takes care of it.  Rob, what -- do we

11  have any dates from Judge Hurley?

12     THE CLERK:  We do not, Judge.

13     THE COURT:  Okay.  All right.  So what about bail

14  conditions?  Is that -- is the government going to submit an

15  application or am I continuing the bail as it is?

16     MR. MINDLIN:  No, Your Honor.  The government

17  consents to continuing the defendant on release.

18     THE COURT:  All right.  So same bail conditions.

19  If there is nothing else, then, I just wish you good luck,

20  Ms. Lazarus.

21     THE DEFENDANT:  Thank you very much.

22     THE COURT:  Anything else?

23     MR. MINDLIN:  Not from the government, Your Honor.

24     THE COURT:  Have a good day.

25     MR. STEIN:  Not from me, Your Honor.

24

1          THE COURT:  Okay.  Have a good day.

2          THE DEFENDANT:  Thank you.

3          MR. STEIN:  You, too.

4          THE DEFENDANT:  Bye-bye.

5      (Proceedings concluded.)

6

7      I, CHRISTINE FIORE, Certified Electronic Court Reporter

8   and Transcriber, certify that the foregoing is a correct

9   transcript from the official electronic sound recording of

10  the proceedings in the above-entitled matter.

11

12

13

14  _____          September 1, 2021

15      Christine Fiore, CERT

16

17

18

19

20

21

22

23

24